### JAMES C. BARRETT v. MICHAEL BARNES, *et al.*

NEW TRIAL; *Order Granting, Sustained.* Where the district court has set aside the verdict of a jury, and granted a new trial on the ground that the verdict is against the evidence, and there appears to have been conflicting testimony upon the principal question, that of negligence, and it is not clear from the record that the verdict ought to have been upheld, this court will not reverse the ruling of the district court and order judgment on the verdict.

#### *Error from Wilson District Court.*

ACTION by *Barrett* against *Barnes* and three others, on an official bond, to recover damages for the alleged negligence of *Barnes* as sheriff of Neosho county. The action was commenced in Labette county, and afterward the venue was changed to Wilson county, where it was tried at the May Term 1874. Verdict for plaintiff for $2,080. On motion of defendants, this verdict was set aside and new trial granted. From this order granting a new trial the plaintiff appeals, and brings the case here on error.

*A. M. York*, and *L. U. Humphrey*, for plaintiff.

*C. F. Hutchings*, for defendants.

The opinion of the court was delivered by

BREWER, J.: This was an action on the case, brought by plaintiff against defendant Barnes, as sheriff of Neosho county, and against the other defendants as sureties on his official bond, for damages alleged to have accrued to him by reason of the negligence of Barnes while having the legal custody and control of plaintiff's cattle.

The admissions in the pleadings establish the following facts: That in the month of August 1870, the plaintiff was the owner of certain cattle, at that time in his possession in said county; that on or about the 10th of August 1870, plaintiff was arrested and brought before T. F. Rager, a justice of the peace of said county, charged with having driven said cattle into the state of Kansas from the Indian Territory at a time prohibited by law; that the justice issued his writ, directed to said defendant Barnes as sheriff, commanding him to drive or cause to be driven said cattle without the state of Kansas, over the same route over which they had been driven in; that said writ came into the hands of said Barnes on the 11th of said August, and that he, under said writ, took the said cattle into his possession, and started to drive the cattle to the Indian Territory; that while they were being thus driven toward the southern boundary of the state, and while in the county of Labette, a number of individuals came upon them in the night-time, between the 12th and 13th days of August, and shot, killed, wounded and injured a number of said cattle. It is further admitted by the pleadings, that at the time of the alleged wrongs, etc., said Michael Barnes was the sheriff of the said county, and the other defendants were sureties upon his official bond. The question of fact presented by the pleadings was, whether the defendant Barnes, in the execution of said writ, was guilty of such negligence as to render him liable in law. Upon the trial of the cause the jury found the issues joined in favor of plaintiff, and assessed his damages at $2,080. On motion of defendants, the court below set aside said verdict and granted

a new trial, on the grounds that the verdict "was not sustained by sufficient evidence, and was contrary to law." To this order plaintiff excepted, and brings the case here for review. We have had several cases before us in which the action of the district court in granting a new trial has been made the subject of review, and the rules of decision in such cases are well settled, and have been often announced. *Anthony v. Eddy,* 5 Kas. 127; *Field v. Kinnear,* 5 Kas. 238; *Atyeo v. Kelsey,* 13 Kas. 212; *McCrum v. Corby,* 15 Kas. 112. Counsel for plaintiff in error seem to think that there is very little conflict in the testimony, and that there is an overwhelming preponderance of evidence in favor of the verdict. We are not so impressed by a perusal of the record. It seems to us that there was a fair question in the case, with conflicting testimony. There was certainly testimony tending to show negligence, and if the court had approved the verdict it would as to this question have been conclusive upon us. But there was also testimony tending to show that the sheriff had used reasonable care and diligence in the matter. Indeed, if the testimony of the sheriff was all that there was in the case, one could scarcely read it without being impressed with the conviction that it would be grossly unjust to mulct him in damages for the loss of these cattle. Let us notice his testimony, and these are the facts appearing therefrom: The plaintiff being in possession of some southern cattle finds himself in trouble, his cattle seized by a mob, and his life threatened, and gets a party to file a complaint charging him with violating the law in bringing the cattle into the state between the 1st of March and the 1st of December, in order that the justice of the peace may issue his warrant to the sheriff to seize the cattle and drive them, over the route by which they were brought, back into the Indian Territory. The preliminary proceedings are had, and the warrant issued. The case is then continued for final trial several days, and when tried the plaintiff proves that he brought them in between the 1st of December and 1st of March, and is acquitted. A query arises right here, whether a party who thus

prostitutes the process of the courts, by causing to be insti-
tuted against himself a *quasi* criminal prosecution, which he
knows to be groundless, for the sole purpose of getting his
property into the hands of the sheriff, can afterward recover
anything from that officer in case of its loss, be the latter
ever so negligent. But we forbear to press this query. The
sheriff receives the warrant, and with three assistants starts
to drive the cattle to the territory, the distance being about
thirty miles. He calls upon the plaintiff to accompany them,
but he refuses, though he now complains that the sheriff did
not take force enough to protect the cattle. He drives until
11 o'clock at night, and then turns off the road and drives
the cattle into a ravine where they are as far as possible con-
cealed. About 2 o'clock some forty to sixty armed persons
ride up and commence firing into the cattle. They were
stampeded, some killed, and less than half ever recovered by
plaintiff. The sheriff, though he had weapons, made no
resistance to this armed party. The next morning he with
his assistants hunted till nearly noon for the cattle, and then
having had nothing to eat since the previous noon he went to
a near village to get dinner and help. Unable there to get
help, he returned to the county-seat. There he informed
plaintiff's counsel of what he had done, secured men to accom-
pany him, but was detained a day waiting for horses which
the counsel agreed to furnish. He subsequently made search
for half a day, with four or five men in the vicinity of the
place where the cattle were stampeded. He found where
several had been killed, and the meat appropriated by indi-
viduals, but found only one alive, and that wounded. Led
to believe that there were none to be found alive, he returned
and reported to plaintiff the names of the parties who had
the meat.

Counsel asserts, that, to sustain the allegation of negligence
the plaintiff relied upon the following facts as testified to by
witnesses on the trial: *First*, That defendant Barnes started
to drive the cattle out of the state with only three men to
assist him, after having received warning that the destruction

of the cattle was threatened. But the sheriff says he called upon the plaintiff to go, and he refused. Can he now be heard to say that the sheriff did not summon force enough? He was under equal obligation with any other citizen to obey the call of the officer, and interested above all others. He was unwilling to risk his own life, and now wants the sheriff to pay him because he did not compel others to risk theirs. *Second,* That Barnes did not start with the cattle until two o'clock P.M. of the 12th, when he might have started in the morning, and by doing so could have driven them out of the state that same day, and thus have avoided a night attack. But Barnes says that when he went to get the cattle he reached Barrett's at ten o'clock A.M. and found them in the custody of a constable, and in the possession of armed men appointed by the constable who refused to give them up without word from that officer; that he was compelled to ride five miles to get him to come and turn over the cattle, and that hence he did not get started with them until two o'clock P.M. And so we might go on through the remaining five facts stated by counsel. Some, as the sixth, were denied by Barnes, and for others he gave his reasons for his conduct.

We do not mean to assert that the facts were as Barnes testified them to have been. That is a matter to be settled in the trial court, and as to that matter both court and jury must agree. All we assert is, that the testimony was not entirely one-sided — that there was much tending to show that the sheriff used reasonable care, or at least that the plaintiff was estopped from saying that he did not, and that therefore as the trial court was constrained to hold that the verdict ought not to stand, we must abide by its decision. It must be borne in mind that negligence is not one of those independent, absolute facts, like the signing of a note, to which the testimony goes directly *pro* and *con*, but is often one of those mixed questions upon which even when the facts are entirely undisputed minds may often fairly disagree. That which seems negligence to one, may seem reasonable care to another. Especially therefore should there be agreement

between the trial court and jury as to the existence of negligence before an officer is mulcted in heavy damages on account of its supposed existence in the discharge of his official duties.

The ruling of the district court will be affirmed.

All the Justices concurring.